# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

APPEAL CASE NO. 21-13527-G

**GUATEMION (JUAN) MOSLEY**,
Appellant / Plaintiff
v.
**PRESTON CYCLES WEST, LLC**
**d/b/a THUNDER TOWER WEST HARLEY-DAVIDSON**
Appellee / Defendant

On Appeal from the United States District Court
For the Northern District of Georgia, Atlanta Division

DISTRICT COURT CIVIL ACTION NO:  1:19-CV-03937-SCJ-JSA

**PRINCIPAL BRIEF OF APPELLEE**
**Preston Cycles West, LLC**
**d/b/a Thunder Tower West Harley-Davidson**

Meredith R. Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com
Megan Mathews Noble
Georgia Bar #477009
MNoble@deflaw.com
DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, GA 30308
Telephone: (404) 885-1400
Facsimile: (404) 876-0992

*Counsel for Defendant/Appellee*

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
Guatemion (Juan) Mosley v. Preston Cycles West, LLC
d/b/a Thunder Tower West Harley-Davidson
Case No. 21-13527-G

## Certificate of Interested Persons and Corporate Disclosure Statement

Pursuant to F.R.A.P. 26.1, 11th Cir. R. 26.1, and 11th Cir. R. 28-1(b), Appellee respectfully notifies the Court, pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1, that the certificate of interested persons filed by Appellant Guatemion (Juan) Mosley is incomplete and does not comply with the requirements of 11th Cir. R. 26.1-3(a) and (c). The following is a full and complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

**Anand, Justin S., Magistrate Judge, United States District Court for the Northern District of Georgia**

**Guerrero, Meredith Riggs of Drew Eckl & Farnham, LLC, attorney for appellee herein**

**Mosley, Guatemion (Juan), appellant herein**

Guatemion (Juan) Mosley v. Preston Cycles West, LLC d/b/a Thunder Tower West Harley-Davidson
Appeal No. 21-13527-G

**Noble, Megan Mathews of Drew Eckl & Farnham, LLC, attorney for appellee herein**

**Preston Cycles West, LLC d/b/a Thunder Tower West Harley-Davidson, appellee herein**

**Walker, Jermaine Anthony of HKM Employment Attorneys LLP, attorney for appellant herein**

**Jones, Steve C., District Judge, United States District Court for the Northern District of Georgia**

<u>Corporate Disclosure Statement</u>

Appellee certifies that there is no parent corporation or any publicly held company that owns 10% or more of its common stock.

## **Statement Regarding Oral Argument**

Pursuant to 11th Cir. R. 28-1(c), Appellee hereby states that it does not believe that oral argument would be helpful to the Court in this matter because: (1) the arguments are fully and succinctly addressed in the briefs; and (2) this case does not involve any new or unique issues of law or fact.

## Table of Contents

**Certificate of Interested Persons and Corporate Disclosure Statement**..............i

**Statement Regarding Oral Argument**................................................... iii

**Table of Contents** ...................................................................iv

**Table of Authorities** ...............................................................vi

**I.**        **Statement of Subject Matter and Appellate Jurisdiction**........... viii

**II.**       **Statement of the Issues**...............................................1

**III.**      **Statement of the Case**................................................1

       **A.**     **Course of Proceedings and Disposition** .........................2

       **B.**     **Statement of Facts** ...........................................3

             **1.**     **Preston's and Hammers's Ongoing Concerns Regarding Plaintiff's Performance.** ............................5

             **2.**     **Plaintiff's Ongoing Performance Issues and the Decision to End Plaintiff's Employment** .....................9

       **C.**     **Standard of Review** ..........................................14

**IV.**      **Summary of the Argument**.................................................15

**V.**       **Argument and Citation of Authority**.....................................17

       **A.**     **The Georgia District Court Correctly Dismissed Plaintiff's Racial Discrimination Claims Because Plaintiff Failed to Establish a Prima Facie Case Under the McDonnell Douglas Burden-Shifting Framework.**..................................17

       **B.**     **Plaintiff's Racial Discrimination Claims Fail as a Matter of Law Because Has Not Shown a Convincing Mosaic of Circumstantial Evidence in Support of Such Claims.** ..................19

             **1.**     **Plaintiff Has Not Established That the Reasons Given by Defendant for the Termination Decision Were a Pretext for Discrimination.**.............................23

**VI.**     **Conclusion**..............................................................................**27**

**Certificate of Compliance withType-Volume Limit, Typeface Requirements, and Type-Style Requirements**..........................................................**xxix**

**Certificate of Service**.............................................................................**xxx**

# Table of Authorities

**Cases**

28 U.S.C. § 1291 ................................................................................ viii

*Banks v. MarketSource, Inc.*, No. 1:18-CV-02235-WMR, 2020 WL
6291422, at *7 (N.D. Ga. Mar. 20, 2020)...........................................22

Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1103
(11th Cir. 2001)...............................................................................17

*Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).................................15

*Brooks v. County Commission of Jefferson County*, 446 F.3d 1160 (11th Cir.
2006) ...............................................................................................23

Burdine, 450 U.S. at 255...........................................................................24

Burton v. Tampa Housing Authority, 271 F.3d 1274, 1276–77 (11th Cir.
2001) ...............................................................................................14

Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S. Ct. 2548 (1986) ...............14

*Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000)............. 23, 25

Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997).............. 18, 23

*Cooper v. Southern Company*, 390 F.3d 695, 725 (11th Cir. 2004).........................23

*Dukes v. Shelby Cty. Bd. of Educ.*, 762 F. App'x 1007, 1011-12 (11th Cir.
2019) ...............................................................................................22

Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)...................25

*Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993)................18

*Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019)................ 18, 19

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).... passim

*McNorton v. Georgia Dep't of Transp.*, 619 F. Supp. 2d 1360, 1380 (N.D.
Ga. 2007)..........................................................................................25

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097 (2000) ........................................................................................24

*Rioux v. City of Atlanta*, 520 F.3d 1269, 1281 (11th Cir.2008) ............................19

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) ........................19

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ....................................23

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089 (1981) ........................................................................................18

Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990) ..................................15

Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087, 1091 (11th Cir. 2004)17, 18, 25

*Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988).......................24

**Statutes**

28 U.S.C. § 1331 ................................................................................... viii

42 U.S.C. § 1981 .....................................................................................17

42 U.S.C. § 2000e-2(a) ...........................................................................17

*Bryan v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009)..................................16

Civil Rights Act of 1866, 42 U.S.C. § 1981 ................................................ viii, 2, 15

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq*........ viii, 2, 15

**Rules**

Fed. R. Civ. P. 56(c)................................................................................14

## I.    Statement of Subject Matter and Appellate Jurisdiction

The United States District Court for the Northern District of Georgia (the "Georgia District Court") has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331, because Appellant asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), federal laws.

Appellant invokes the appellate jurisdiction of this Court pursuant to 28 U.S.C. § 1291, as this is an appeal from a final decision of the Georgia District Court. The Georgia District Court entered its Order granting Appellee's Motion for Summary Judgment on September 10, 2021, and entered judgment of dismissal on the same day. Appellant filed his Notice of Appeal on October 7, 2021.

## II.    Statement of the Issues

The Georgia District Court granted Defendant's Motion for Summary Judgment on the basis that Plaintiff's claims under Title VII and Section 1981 failed as a matter of law because Plaintiff: (1) did not establish that that Defendant could be held vicariously liable for sexually suggestive statements made to Plaintiff by a coworker; (2) did not establish Defendant retaliated against Plaintiff; (3) failed to meet his evidentiary burden to establish a *prima facie* claim of racial discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973); and (4) did not show a "convincing mosaic of circumstantial evidence" that would allow him to survive summary judgment on his racial discrimination claim.

The issues for review by this Court are:

1.    Whether the Georgia District Court correctly determined that Plaintiff failed to meet his evidentiary burden to establish a *prima facie* claim of racial discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973); and

2.    Whether the Georgia District Court correctly determined that Plaintiff did not show a "convincing mosaic of circumstantial evidence" that would allow him to survive summary judgment on his racial discrimination claim.

## III.    Statement of the Case

1

## A.    Course of Proceedings and Disposition

On August 31, 2019, Plaintiff initiated this lawsuit in the Georgia District Court against Defendant Preston Cycles West, LLC d/b/a Thunder Tower West Harley-Davidson ("Defendant" or "PCW"). Plaintiff asserted federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff's complaint asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

On November 13, 2020, Defendant filed its Motion for Summary Judgment requesting that the Georgia District Court dismiss all remaining claims asserted by Plaintiff. On July 30, 2021, U.S. Magistrate Judge Justin S. Anand issued a Final Report and Recommendation on a Motion for Summary Judgment (the "Report and Recommendation") in which he recommended that Defendant's Motion for Summary Judgment be granted as to Plaintiff's Title VII sexual harassment claim and Title VII and Section 1981 retaliation claims, but denied as to Plaintiff's racial discrimination claims under Title VII and Section 1981. On August 13, 2021, Defendant submitted an objection to the recommendation in the Report and Recommendation that the Georgia District Court deny Defendant summary judgment on Plaintiff's Title VII and Section 1981 racial discrimination claims.

On September 10, 2021, United States District Court Judge Steve C. Jones issued his Order granting Defendant's Motion for Summary Judgment as to all

claims asserted by Plaintiff (Docket 91, the "Order"). In his Order, Judge Jones provided a detailed explanation for his decision to grant summary judgment in favor of Defendant, dismiss Plaintiff's claims as a matter of law, and award Defendant its litigation costs. The Order held that Plaintiff: (1) did not establish that that Defendant could be held vicariously liable for sexually suggestive statements made to Plaintiff by a coworker; (2) did not establish Defendant retaliated against Plaintiff; (3) failed to meet his evidentiary burden to establish a *prima facie* claim of racial discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973); and (4) did not show a "convincing mosaic of circumstantial evidence" that would allow him to survive summary judgment on his racial discrimination claim.

### B.    Statement of Facts

Defendant PCW is a Georgia corporation that owns and operates a Harley-Davidson motorcycle dealership located at 1384 Southlake Parkway in Morrow, Georgia (the "Dealership"). (Docket 59-3, pp. 4-5). The Dealership is owned and operated by Gene Preston. (Docket 59-3, pp. 4,6). Preston is actively involved with the Dealership's operations. (Docket 59-5, p. 2). Jeanne Chambers serves as the Human Resources Manager. (Docket 59-6, p. 3).

Throughout the time Preston operated the Dealership, he has hired individuals of different races, including many African American individuals.

Defendant prohibits any form of harassment or discrimination based on race or any other characteristic protected by law. (Docket 59-5, p. 15). The Dealership's policies direct employees who believe they have been subjected to discrimination to report any offensive incidents so that Defendant can take appropriate corrective action.[1]

On or about April 12, 2017, Defendant hired Plaintiff to work as a Motorcycle Sales Associate ("MSA") at the Dealership. (Deposition of Guatemion "Juan" Mosley (Docket 61, pp. 25, 274-275; Docket 59-3, pp. 5-6, Docket 59-4, pp.1-2). The decision to hire Plaintiff was made by Preston, who, like Plaintiff, is African American. (Docket 59-3, pp. 5-6, 19-20; Docket 59-4).[2] Plaintiff's job duties included, among other things: (1) using time at work effectively to meet customer needs and solicit sales of products; (2) ensuring that customers are well-informed about the features of the motorcycles the Dealership sells; and (3)

---

[1] At the time of his hire, Plaintiff acknowledged that he was made aware of the Dealership's Employee Handbook and written policies. (Docket 61, p.285). (The brief of Appellant cites to Docket 59-8 as being Plaintiff's deposition transcript. However, Docket 59-8 is the minuscript of the deposition of Plaintiff which was attached as an exhibit to a brief and does not contain all of the deposition exhibits. Therefore, Appellee is submitting a Supplemental Appendix to include Docket 61 which is which is the full version of the deposition of Plaintiff and includes all of the deposition exhibits, and Appellee's brief will cite to Docket 61 instead of Docket 59-8 when citing to Plaintiff's deposition transcript.)

[2] Plaintiff was referred to apply for employment at the Dealership by his cousin, Aaron Hughes, who is also African American and who has worked at the Dealership for several years. (Docket 61, pp. 15-16, 22).

working to create a great buying experience for the customer and maximize the profitability of the Dealership. (Docket 59-7, pp. 2-3, 23-26; Docket 61, pp. 77-85, 281-284).

In August 2017, Defendant hired Robert Hammers to serve as the Dealership's GSM. (Docket 59-5, p. 2; Docket 59-7, p. 3).  As GSM, Hammers supervised and supported the MSAs. (Docket 59-7, p.2; Docket 59-3, pp. 8-9; Docket 59-5, pp. 2-3, 20-23).  When Hammers started working as the Dealership's GSM, he met with the MSAs, and explained that he expected all MSAs to report to work on time and as scheduled, make productive use of their time at work, and work cohesively with other members of the MSA team. (Docket 59-7, p.3).

Preston and Hammers agreed that the Dealership is more successful if the MSAs work cooperatively as a team. They expected all MSAs to comply with their directions and any directions given to them by the Dealership's General Manager ("GM"). Hammers conveyed this message to the MSAs when he began working as the GSM and throughout his time at the Dealership. (Docket 59-7 pp.3-4; Docket 59-5, p.3; Docket 61, pp. 106-108).

### 1. Preston's and Hammers's Ongoing Concerns Regarding Plaintiff's Performance.

Preston and Hammers both observed that Plaintiff often did not follow directions he and other supervisors gave to him. (Docket 59-5, p.4).  For example, Preston and Hammers frequently observed Plaintiff not making productive use of

the time he had available at work when he was not working with customers to make or complete motorcycle sales. Hammers routinely observed Plaintiff sitting in the Dealership not doing anything or watching videos on his cell phone. (Docket 59-7, p.4; Docket 59-5, pp. 4-5).

Hammers and Clarence Moon directed the MSAs to make telephone calls to potential customers when they did not have other work to do. (Docket 61, pp.51-54). However, Plaintiff routinely refused to do so, stating that he didn't need to make telephone calls to potential customers because his sales numbers were already higher than those of other MSAs. (Docket 59-7, pp.4-5; Docket 59-5, p.5). Preston and Hammers also observed that Plaintiff often either did not report to work early enough to assist with preparing the Dealership to open, or he simply did not assist with those tasks, such as driving the motorcycles to the front of the Dealership so that they were on display for potential customers. (Docket 59-7, p.5; Docket 59-5, p.5; Docket 61, pp.91-95; Docket 59-6, p.6). Whenever Hammers and other supervisors asked Plaintiff to assist with tasks assigned to all MSAs, he frequently responded that he did not want or need to do these tasks because his sales numbers were high. (Docket 59-7, p.5; Docket 59-5, pp.5-6).

Plaintiff also frequently reacted with hostility if Mr. Preston or Hammers made changes to Dealership procedures. (Docket 59-5, p.6; Docket 59-7, pp.5-6; Docket 61, pp.87-89). Preston and Hammers often observed and heard about

6

Plaintiff engaging in disagreements with other MSAs over issues such as who should get to work with a client who called or walked into the Dealership or who should receive particular commissions from motorcycle sales. Although such disagreements are known to occur in the vehicle sales industry, Preston and Hammers observed that Plaintiff engaged in such disagreements more frequently than other MSAs and Plaintiff was usually the associate who instigated the disagreement. (Docket 59-7, p.6; Docket 59-5, p.6).

Preston routinely spoke with Plaintiff about his employment at the Dealership. Plaintiff told Preston that he was interested in working in Finance and Insurance ("F&I"). Preston told Plaintiff that he would support him in learning what he needed to learn in order to transition to a F&I position at the Dealership. Preston hoped that Plaintiff would improve his attitude and work performance so that he could advance at the Dealership. (Docket 59-5, pp.16-17).

During his time working with Plaintiff, Hammers issued several written disciplinary actions to Plaintiff as a result of his failure to follow Dealership policies. (Docket 59-7, p.8). On September 18, 2017, Plaintiff left work prior to the end of his scheduled shift without notifying Hammers. Dealership policy states that an employee must notify the GSM when leaving work for any reason and, if the GSM is not available, the next step is to notify the Sales Manager. Hammers issued a written disciplinary action to Plaintiff for failing to follow this policy.

(Docket 59-7, pp. 8, 28). On November 15, 2017, Hammers issued a written disciplinary action to Plaintiff due to his failure to report to work on time. (Docket 59-7, pp. 9, 30; Docket 61, pp.101-102, 287).

Sometime in late 2017, Hammers issued Plaintiff another disciplinary action related to his failure to report to work as scheduled. However, in order to motivate him to improve his work performance and attitude, Hammers showed Plaintiff the disciplinary action and then tore it and put in the trash in front of him in order to show Plaintiff that Hammers wanted to move forward with him in a positive manner. (Docket 59-7, p.9; Docket 61, pp.90-91).

In December 2017, Hammers completed an evaluation of Plaintiff's work performance (the "December 2017 Evaluation"). In the December 2017 Evaluation, Hammers noted his concerns regarding Plaintiff's attendance and his willingness to work cooperatively with the MSA team by marking that Plaintiff needed improvement in these areas: (1) acceptance and implementation of suggestions; (2) amount of work performed; (3) adjusts to work situation; (4) attitude and cooperation; (5) productivity; and (6) dependability. (Docket 59-7, pp.9-10, 32-33; Docket 59-5, pp. 8, 30-31; Docket 61, pp.103-108, 288-289).

Hammers met with Plaintiff on December 15, 2017 to discuss the December 2017 Evaluation. (Docket 59-7, pp. 10, 35; Docket 65).[3]

### 2.    Plaintiff's Ongoing Performance Issues and the Decision to End Plaintiff's Employment

On Saturday, February 20, 2018, almost two hours after he was supposed to have already been at work, Plaintiff called Baker, the Sales Manager, to report he was having car trouble. Ultimately, Plaintiff never reported to work that day, and did not call back to say that he wouldn't be at work. Saturdays are one of the busiest days for the Dealership and Plaintiff's unauthorized absence had a detrimental effect on the operations that day. Therefore, on February 20, 2018, Hammers issued Plaintiff a written disciplinary action for his failure to report to work. In addition, Preston and Hammers agreed that Plaintiff would be suspended without pay from February 20, 2018 to February 24, 2018 due to his repeated violations of the attendance policy and the fact that he did not call a supervisor until almost two hours after he was scheduled to be at work and he never advised that he would not be at work at all that day. (Docket 59-7, pp.11-12, 37; Docket 59-5, pp.10-11, 33; Docket 61, pp.130-135, 291; Docket 59-6, p.6).

---

[3] Plaintiff admits that "all the time" his supervisors at the Dealership – specifically Hammers, Clarence Moon (who is African American), and Leonard Baker (also African American) – were telling him that he was "not doing" things he should be doing. (Docket 61, pp.48-50, 220).

In March 2018, Preston hired Jeff Lewis to be the Dealership's GM. (Docket 59-7, p.12; Docket 59-5, p.11). Lewis had a brusque management style. He had a quick temper and often spoke harshly to employees. (Docket 59-7, p.13; Docket 59-5, p.12; Docket 61, pp.141-143). Plaintiff testified that Lewis was "very disrespectful, very belligerent, very demoralizing, very aggressive" towards nearly all employees including Hammers, Baker, Jameson Previte, and Mike Davis. (Docket 61, pp.150-153; Docket 59-20, pp.5,8). Plaintiff did not report Lewis's harsh conduct to Preston or Chambers. (Docket 61, pp. 153, 156).

Neither Preston nor Hammers observed Lewis acting in a discriminatory manner toward any employee, and during Plaintiff's employment with the Dealership, no employee reported to Preston or Hammers that he or she believed Lewis had discriminated against him or her. Preston and Hammers observed Lewis speaking harshly to several employees, including both Caucasian and African American employees. (Docket 59-7, p.13; Docket 59-5, p.12).

In the months following the December 2017 Evaluation, Preston and Hammers did not see an improvement in Plaintiff's attitude and performance, despite their ongoing attempts to counsel him and formally discipline him when necessary. Therefore, in April 2018, Hammers recommended that the Dealership end his employment. Lewis supported this recommendation and Preston gave the

final approval for the decision to move forward with ending Plaintiff's employment. (Docket 59-7, pp.13-14; Docket 59-5, pp.13-14).

On April 18, 2018, Plaintiff was informed that the Dealership was ending his employment. (Docket 59-7, p.14; Docket 59-5, p.14; Docket 61, pp.156-160, 292). According to Plaintiff, Hammers informed him that that the Dealership was "moving in a different direction." (Docket 61, p. 158). Plaintiff's race played no role whatsoever in Hammers' recommendation that the Dealership end Plaintiff's employment or Preston's decision to end Plaintiff's employment. (Docket 59-7, p.14; Docket 59-5, p.14). Plaintiff admits that no one told him or even indicated to him that his race played any part in the decision to end his employment. (Docket 61, pp. 158, 292).

Plaintiff testified that all the other MSAs at the Dealership were treated more favorably than him. Plaintiff testified that his supervisors told him that "[he was] doing this, [he was] not doing that, but [he's] selling the motorcycles while [his] coworkers get to do the minimum and sit there and take no stress from anyone and they get all the comps given to them." (Docket 61, p.48). Plaintiff testified repeatedly stated that he believed "everybody else" at the Dealership was treated more favorably than him. (Docket 61, pp.179-181, 293-315). It is also undisputed that Defendant disciplined and terminated other employees for reasons similar to

those that resulted in Plaintiff's separation from Defendant, including several Caucasian employees.  (Docket 59-6, pp.4-5).

Importantly, Plaintiff testified in his deposition that he believed that the individual the Dealership hired to "replace" him, was Tammie Landis, an African American female. (Docket 61, pp.171-178, 336-337; Docket 59-20, p.7).

Jameson Previte testified that after Plaintiff's employment ended, Previte heard Lewis state that the Dealership ended Plaintiff's employment because he wore "FUBU" clothing to work. However, Previte confirmed that Lewis did not state that Plaintiff's termination was based on his race or that Lewis understood "FUBU" to be a brand of clothing usually worn by African Americans. (Docket 59-20, pp.6-7).   When asked to identify the evidence he has that Defendant discriminated against him, Plaintiff identified only: (1) Lewis's alleged comment regarding Plaintiff wearing "FUBU"; (2) Lewis's alleged comments about the clothing Plaintiff wore to work ; and (3) his perception that Lewis spoke harshly to African American employees. (Docket 61, pp.165-166, 182-185).

Plaintiff admits that he cannot identify any employee of a different race who engaged in conduct similar to his that Defendant treated differently than him. Importantly, Defendant hired an African American female as a Motorcycle Sales Associate just days after it ended Plaintiff's employment. (Docket 73-1, p.11).

The undisputed facts establish that Defendant had legitimate, non-discriminatory, non-retaliatory reasons for any adverse action it took with respect to Plaintiff's employment. Plaintiff alleges that the fact that he had high sales figures establishes that his termination must have been based on his race or his report of inappropriate conduct. However, the undisputed facts establish that his supervisors and Preston repeatedly advised him that strong sales figures did not relieve him of his responsibility to comply with his supervisors' directions. Plaintiff's refusal to listen to the counseling and discipline his supervisors gave to him during the fifteen (15) months he worked at the Dealership ultimately resulted in the Dealership's decision to terminate his employment. Plaintiff has not identified factual support for his assertion that the reasons Defendant gave for its decisions were pretexts for discrimination.

Plaintiff's race discrimination claim rests entirely on Plaintiff's allegation that Jeff Lewis, the Dealership's General Manager, made statements to Plaintiff and other employees that were discriminatory toward African Americans. These allegations are insufficient to support a claim for racial discrimination because: (1) Plaintiff himself could not identify conduct by Lewis towards him that he perceived to be discriminatory in nature; (2) the conduct cited by Plaintiff is not discriminatory on its face and Plaintiff's allegations are founded upon assumptions that Lewis intended the statements to be discriminatory; and (3) Plaintiff did not

13

report to Defendant at any point during his employment that he believed that he was being discriminated against on the basis of his race.

Even assuming arguendo that Lewis was biased against African American employees, it is undisputed that Lewis was not the decision-maker with respect to any adverse action taken by Defendant against Plaintiff. It is undisputed that Hammers made the decision to suspend Plaintiff in February 2018 and the initial recommendation to end Plaintiff's employment in July 2018. Both Hammers and Preston have confirmed that Hammers made the initial recommendation and Preston was the final decision-maker and Plaintiff has presented no evidence to the contrary.

### C.    Standard of Review

The Appellate Court reviews *de novo* the District Court's grant of summary judgment. *Burton v. Tampa Housing Authority,* 271 F.3d 1274, 1276–77 (11th Cir. 2001). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S. Ct. 2548 (1986).

A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise as

provided by the rule, must set forth specific facts showing that there is a genuine issue for trial. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby,* 911 F.2d 1573, 1576–77 (11th Cir. 1990). "In an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant-employer based its employment decision on an illegal criterion." *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).

## IV.    Summary of the Argument

The Georgia District Court properly determined that Defendant is entitled to summary judgment on all claims asserted by Plaintiff, including his claim that Defendant discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq*. and the Civil Rights Act of 1866, 42 U.S.C. § 1981 because Plaintiff: (1) failed to meet his evidentiary burden to establish a *prima facie* claim of racial discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973); and (2) has not shown a "convincing mosaic of

circumstantial evidence" that would allow him to survive summary judgment on his racial discrimination claim.[4]

Plaintiff has identified no evidence whatsoever that his race played any part in Hammers' recommendation that the Dealership end Plaintiff's employment or Preston's decision to end Plaintiff's employment. The undisputed facts in the record establish that Defendant ended Plaintiff's employment because he failed to follow his supervisors' directions, experienced ongoing attendance issues, and did not improve his attitude despite repeated counseling from his supervisors, which began long before Defendant hired Lewis.

Plaintiff has not identified any evidence indicating that the reason given for the decision to end his employment was a pretext for discrimination. The Georgia District Court correctly determined that Plaintiff did not show such weaknesses and implausibilities in Defendant's reasons for ending his employment that demonstrate that the proffered reason was not the true reason for the employment decision, nor did Plaintiff establish that discrimination was the real reason for the termination. Accordingly, this Court should dismiss Plaintiff's appeal and enter an order affirming the Georgia District Court's grant of summary judgment in Defendant's favor on all claims asserted by Plaintiff in this matter.

---

[4] As noted by Plaintiff in his Appellate Brief, the same legal framework applies to Title VII racial discrimination claims and Section 1981 claims. *Bryan v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009).

## V.    Argument and Citation of Authority

### A.    The Georgia District Court Correctly Dismissed Plaintiff's Racial Discrimination Claims Because Plaintiff Failed to Establish a Prima Facie Case Under the McDonnell Douglas Burden-Shifting Framework.

The Georgia District Court correctly determined that Plaintiff failed to establish a *prima facie* case of racial discrimination under the *McDonnell Douglas* burden-shifting framework.

Title VII prohibits employers from discriminating against any individual because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a); *see also Bass v. Bd. of County Comm'rs, Orange County, Fla.,* 256 F.3d 1095, 1103 (11th Cir. 2001). 42 U.S.C. § 1981 prohibits discrimination and retaliation on the basis of race. ("All persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens.").

Under the burden-shifting framework of *McDonnell Douglas,* a plaintiff must <u>first</u> establish a *prima facie* case, which generally consists of the following: (1) the plaintiff was a member of a protected class, (2) he was qualified to do the job, (3) he was subjected to an adverse employment action, and (4) similarly situated employees outside of the protected class were treated differently. *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087, 1091 (11th Cir. 2004). If a plaintiff makes a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1087.

Once the employer identifies a legitimate, nondiscriminatory reason for its decision, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reason was not the true reason for the employment decision, but merely a pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S. Ct. 1089 (1981); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993). The plaintiff "cannot recast the reason but must meet it head on and rebut it," and must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's rationale. *Wilson,* 376 F.3d at 1088; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997).

As the Georgia District Court explained, the individuals Plaintiff identifies as "comparators" who he alleges were treated more favorably that him are not similarly situated to him in all material respects and, therefore, cannot properly be considered "comparators." (Docket 85, pp.45-46). This Court has made clear that without such a comparator, a plaintiff generally cannot establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework. See *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019). Accordingly, the Georgia District Court correctly determined that because Plaintiff failed to identify a comparator "with whom he is similarly situated in all material respects" and who

Defendant treated more favorably than Plaintiff, he cannot advance a *prima facie* claim of discrimination under the *McDonnell Douglas* framework. *Id*. at 1221-24.

**B.    Plaintiff's Racial Discrimination Claims Fail as a Matter of Law Because Has Not Shown a Convincing Mosaic of Circumstantial Evidence in Support of Such Claims.**

The Georgia District Court correctly determined that Plaintiff has not shown a "convincing mosaic of circumstantial evidence" that would allow him to survive summary judgment on his racial discrimination claim.

In *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011), this Court explained that a plaintiff may raise a reasonable inference of the employer's discriminatory intent through various forms of circumstantial evidence. *Id*. at 1328-29 (*citing Rioux v. City of Atlanta,* 520 F.3d 1269, 1281 (11th Cir.2008)). This Court made clear, however, that, in order to avoid summary judgment, a plaintiff must present circumstantial evidence "that raises a reasonable inference that the employer discriminated against the plaintiff." *Id*.

As explained by the Georgia District Court in the Order, a plaintiff may show a "convincing mosaic" by evidence that demonstrates (1) suspicious timing, ambiguous statements, and other evidence from which a discriminatory intent might be drawn; (2) systematically better treatment of similarly situated employees; and (3) that the employer's justification is pretextual. *Lewis*, 934 F.3d at 1185. After a thorough review of the evidence cited by Plaintiff in support of

his racial discrimination claim, the Georgia District Court correctly determined that such evidence was not sufficient to show a "convincing mosaic" of circumstantial evidence that raised a reasonable inference that Defendant discriminated against Plaintiff.

Plaintiff alleges that Lewis made comments that show that he was "racist" against African Americans. Specifically, Plaintiff alleges that Lewis: (1) told another employee that Defendant ended Plaintiff's employment because he wore "FUBU" clothing to work; (2) expressed a "hostility to "urban" clothing; and (3) said that Plaintiff was "blacker" than the rest of the employees because he acted like a street person. As the Georgia District Court noted in the Order, the only comment allegedly made by Lewis that was related to the termination of Plaintiff's employment was Lewis's comment to another employee that Defendant ended Plaintiff's employment because Plaintiff wore "FUBU" clothing to work.

Plaintiff has presented no evidence whatsoever that Plaintiff's "FUBU" clothing was a factor that was considered by Hammers or Preston when deciding to end his employment.[5] Plaintiff himself admits that neither Preston, nor Hammers, nor Lewis told that him that his employment was ended because he wore "FUBU" clothing to work. Plaintiff has not presented any evidence connecting Plaintiff's

---

[5] There is no evidence in the record that Lewis knew that "FUBU" is an African American clothing brand.

termination with any of the other "racist" statements Lewis allegedly made about Plaintiff or African Americans in general. Therefore, the District Court correctly determined that "Lewis' commentary does not present a convincing mosaic of circumstantial evidence that would allow a jury to infer that Plaintiff's firing was caused by racial animus." (Docket 91, p.15).

Further, the Georgia District Court correctly determined that the evidence in the record establishes that there was "a critical disconnect between Lewis and the decision to fire Plaintiff." Plaintiff has not established that there is a genuine issue of material fact as to whether Lewis was involved in or influenced the decision to end Plaintiff's employment. The undisputed evidence in the record establishes that Hammers initiated the decision to end Plaintiff's employment. Lewis approved Hammers' recommendation, and even spoke with Defendant's human resources department about it, but it is undisputed that **Preston, the owner and operator of the Dealership, who, like Plaintiff, is African American, was the final decision-maker with respect to the decision to end his employment.** The evidence in the record establishes that Preston made the decision to end Plaintiff's employment upon <u>Hammers'</u> recommendation – <u>not Lewis's</u>. Therefore, the Georgia District Court correctly determined that the "cat's paw" theory of discrimination is not applicable to this matter.

21

Even more fatal to Plaintiff's claim that he was terminated on the basis of his race is the fact that Defendant **hired an African American individual to replace Plaintiff.** This undisputed fact, coupled with the substantial evidence that Plaintiff's race played no part in the decision to end his employment, establishes the complete and utter lack of a "convincing mosaic of circumstantial evidence" of discrimination against Plaintiff.

As the Georgia District Court explained in the Order, the "convincing mosaic" method of proving discrimination is "a totality of the circumstances analysis." *Banks v. MarketSource, Inc.*, No. 1:18-CV-02235-WMR, 2020 WL 6291422, at *7 (N.D. Ga. Mar. 20, 2020) (citing *Dukes v. Shelby Cty. Bd. of Educ.*, 762 F. App'x 1007, 1011-12 (11th Cir. 2019)). Upon a review of the facts in the record in a light most favorable to Plaintiff, the Georgia District Court correctly determined that the totality of the circumstances could not allow a reasonable jury to determine that Plaintiff's race played any part whatsoever in Defendant's decision to end his employment.

Because the Georgia District Court correctly determined that Defendant is entitled to summary judgment in its favor on Plaintiff's racial discrimination claim, Defendant respectfully submits that this Court must dismiss Plaintiff's appeal and issue an Order affirming the Georgia District Court's Order.

**1.    Plaintiff Has Not Established That the Reasons Given by Defendant for the Termination Decision Were a Pretext for Discrimination.**

The law is clear that in order to establish that an employer's reasons for an adverse employment action were pretextual, a plaintiff <u>must</u> demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1530. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Cooper v. Southern Company*, 390 F.3d 695, 725 (11th Cir. 2004) (*quoting Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000)).

As this Court explained in *Brooks v. County Commission of Jefferson County*, 446 F.3d 1160 (11th Cir. 2006), a plaintiff does not establish that an employer's proffered reasons for its adverse employment decision were pretextual simply by quarreling with the wisdom of those reasons. *Id*. at 1163. A reason is not pretext for discrimination unless a plaintiff shows "<u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason." *Id*. at 1163 (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

In *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S. Ct. 2097 (2000), the United States Supreme Court made it clear that "the employer is in the best position to put forth the actual reason for its decision." *Id.* at 147. Thus, once an employer proffers a reason for the action it took, "the factual inquiry proceeds to a new level of specificity." *Burdine,* 450 U.S. at 255. A plaintiff must present "significantly probative" evidence on the issue to avoid summary judgment. *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988).

Plaintiff cannot establish that the reasons Defendant gave for the decision to end Plaintiff's employment were a pretext for discrimination. The undisputed facts establish that Defendant had legitimate, non-discriminatory reasons for any adverse action it took with respect to Plaintiff's employment. Since before December 2017, Defendant experienced ongoing attendance issues and issues with Plaintiff's attitude and willingness to take direction from his supervisors. In the months following the December 2017 Evaluation, Preston and Hammers did not see an improvement in Plaintiff's attitude and performance, despite their ongoing attempts to counsel him and formally discipline him when necessary. Therefore, in April 2018, Hammers recommended that the Dealership end his employment and Preston gave the final approval for the decision to move forward with ending Plaintiff's employment. As noted by the Magistrate Judge in the Report and

Recommendation, there is documentation in the record of these ongoing issues and the Dealership's attempts to counsel Plaintiff on these issues.

Federal courts have made it clear that "if the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088. "[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Chapman,* 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)). "[I]t is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not [discriminatorily] motivated." *McNorton v. Georgia Dep't of Transp.*, 619 F. Supp. 2d 1360, 1380 (N.D. Ga. 2007).

Plaintiff has not identified any evidence whatsoever that would lead this Court to believe that Plaintiff's race played any part in Defendant's decision to end Plaintiff's employment. Plaintiff alleges that Defendant did not identify the reason for the decision when it notified him of his termination. However, even assuming this allegation is worthy of credence, it is not sufficient to establish pretext under the well-established law on this issue because there is no evidence indicating that the decision was based on his race. Nor is Lewis's alleged statement that Defendant ended Plaintiff's employment because he wore "FUBU" clothing enough to establish pretext. This statement was allegedly made to another

25

employee when asked why Defendant ended Plaintiff's employment. The evidence in the record establishes that Plaintiff's clothing played no part in his termination and Plaintiff himself was never told that his termination was based on his clothing. Even more importantly, as explained above, this statement itself does not establish discrimination on the basis of race because there is no evidence in the record that "FUBU" is an African American clothing brand or that Lewis knew that "FUBU" is a brand of clothing predominantly worn by African American individuals.

Plaintiff alleges, without factual support, that the fact that Defendant ended Plaintiff's employment after Lewis was hired as the Dealership's GM shows that the decision to end Plaintiff's employment was based on his race. However, <u>Preston</u> decided to end Plaintiff's employment upon <u>Hammers'</u> recommendation – not Lewis's. Preston and Hammers had worked with Plaintiff for a significant period of time and had observed that repeated, ongoing counseling was not successful in resolving the issues they were encountering with Plaintiff's work performance and attitude. The fact that they made this decision after Lewis was hired does not establish – or even indicate – that the reasons Defendant gave for the termination decision was a pretext for discrimination.

These inferences and assumptions simply are not enough to satisfy the standards set by the courts for establishing pretext.

In sum, Plaintiff has failed to present evidence showing that Defendant discriminated against Plaintiff on the basis of his race or that the reasons Defendant gave for ending Plaintiff's employment were a pretext for discrimination. The law is clear that the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *McNorton*, 619 F. Supp. 2d at 1373-74. Plaintiff has not satisfied this burden and, accordingly, Defendant is entitled to judgment as a matter of law in its favor on Plaintiff's racial discrimination claims.

## VI.    Conclusion

Because the legal authority supports the Georgia District Court's well-reasoned Order that Plaintiff failed to establish that Defendant discriminated against Plaintiff on the basis of his race, this Court should **AFFIRM** the Georgia District Court's Order granting Defendant's Motion for Summary Judgment.

Respectfully submitted this 16th day of December, 2021.

s/*Meredith Riggs Guerrero*
Meredith R. Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com
Megan Mathews Noble
Georgia Bar #477009
MNoble@deflaw.com
*Counsel for Defendant / Appellee*

DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, GA 30308

Telephone: (404) 885-1400
Facsimile: (404) 876-0992

## <u>Certificate of Compliance withType-Volume Limit, Typeface Requirements, and Type-Style Requirements</u>

1.     This document complies with the word limit of Fed.R.App.P. 32(A)(7)(B) because, excluding the parts of the document exempted by Fed.R.App.P. 32(f), this document contains 8152 words.

2.     This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14 pt. font and Times New Roman type style.

Respectfully submitted this 16th day of December, 2021.

s/*Meredith Riggs Guerrero*
Meredith R. Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com
Megan Mathews Noble
Georgia Bar #477009
MNoble@deflaw.com
*Counsel for Defendant / Appellee*

DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, GA 30308
Telephone: (404) 885-1400
Facsimile: (404) 876-0992

## <u>Certificate of Service</u>

I HEREBY CERTIFY that on December 16, 2021, I electronically filed the within and foregoing ***Principal Brief of Appellee*** with the Clerk of Court using the CM/ECF filing system which will automatically send email notification of such filing to counsel of record.  I further certify that, on this date, I mailed 4 copies of the Principal Brief of Appellee to the Clerk of Court.

This 16th day of December, 2021.

s/*Meredith Riggs Guerrero*
Meredith R. Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com
Megan Mathews Noble
Georgia Bar #477009
MNoble@deflaw.com
*Counsel for Defendant / Appellee*

DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, GA 30308
Telephone: (404) 885-1400
Facsimile: (404) 876-0992